Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ORIENTAL BANK<br><br>Parte Apelante<br><br>v.<br><br>ORLANDO FIGUEROA MARCANO, GLORIA ESTHER PADILLA CALDERÓN Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Parte Apelada | KLAN202300547 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Toa Alta<br><br>Civil núm.: BY2021CV00978<br><br>Sobre: Cobro de dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores.

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece Oriental Bank (Oriental o parte apelante) mediante el recurso de *Apelación* y nos solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia (TPI), Sala de Bayamón, el 22 de febrero de 2023, notificada el 24 de febrero de 2023. En el referido dictamen, el foro primario desestimó con perjuicio la causa de acción de ejecución de hipoteca. El 10 de marzo de 2023, la parte apelante presentó *Moción de Reconsideración*, la cual el TPI declaró No Ha Lugar mediante *Resolución y Orden* emitida el 24 de mayo de 2023, notificada el 25 de mayo de 2023.

Examinada la solicitud de autos ante nuestra consideración, la totalidad del expediente y el estado de derecho aplicable, modificamos la *Sentencia Parcial* apelada mediante los fundamentos que expondremos a continuación, y así modificada, se confirma.

**I.**

El 11 de marzo de 2021, Oriental presentó una *Demanda* en cobro de dinero y ejecución de garantías, contra el Sr. Orlando Figueroa Marcano, la Sra. Gloria Esther Padilla Calderón, y la Sociedad Legal de Bienes Gananciales compuesta por ambos (matrimonio Figueroa-Padilla o parte apelada).[1] En síntesis, adujo que el 20 de agosto de 2005, la parte apelada suscribió un pagaré hipotecario a favor de RG Premier Bank of Puerto Rico, o a su orden, debidamente endosado a favor de Oriental, por la suma principal de **$26,800.00**, devengando intereses a razón del **6.625%**, pagadero mensualmente en plazos de **$171.60**.[2] Como garantía de pago, en la misma fecha, la parte apelada otorgó ante el Notario Félix Javier Santiago García la escritura núm. 159.[3] En ella, se constituyó una hipoteca que grava un bien inmueble sito en Toa Baja.

Oriental alega que, desde el 1 de agosto de 2020, el matrimonio Figueroa-Padilla dejó de pagar las mensualidades de su obligación. Por lo que, declaró vencida y exigible la totalidad de la deuda ascendente a la suma de **$19,609.28** del principal, los intereses a razón de **6.625%**, la suma de **$12.00** por cargos, más la suma de **$2,680.00** en concepto de costas, gastos y honorarios de abogados.

En respuesta, el matrimonio Figueroa-Padilla presentó el 5 de mayo de 2021 una *Contestación a Demanda y Reconvención.*[4] Alegaron que, el 20 de septiembre de 2020 venció la deuda y pagaron la totalidad mediante *débito directo*. Sin embargo, sostienen que Oriental intentó cobrar un pago final de aproximadamente $19,000.00, el cual no había sido pactado en el *Pagaré*, ni en la *Escritura de Hipoteca*. Por consiguiente, solicitaron la desestimación

---

[1] Véase, *Apéndice* de la Apelación, págs. 1-3.
[2] *Íd.*, págs. 4-7.
[3] *Íd.*, págs. 8-33.
[4] *Íd.*, págs. 34-37.

de la demanda, que la parte apelante reparara el daño a su crédito y se ordenara el pago de daños por angustias mentales.

En cumplimiento con la Ley Núm. 184-2012, según enmendada, el 18 de junio de 2021, siendo notificada el 21 de junio de 2021, el TPI refirió el caso al Centro de Mediación de Conflictos (Centro de Mediación).[5]

Sin embargo, el 24 de junio de 2021, la parte apelada presentó una *Moción de Reconsideración y Solicitud de Paralización de Mediación*.[6] El matrimonio Figueroa-Padilla arguyó que el foro primario debía reconsiderar la determinación de referir el caso a un proceso de mediación, puesto que, en el caso de autos no se contemplaba una falta de pago o atrasos en el préstamo hipotecario. No obstante, el TPI denegó la moción.[7]

Luego de varias incidencias procesales, el 27 de junio de 2022, el Centro de Mediación presentó *Moción Informativa sobre Resultado de caso de Ejecución de Hipoteca Atendido mediante Servicio de Videoconferencia Intramuros de los CMC*.[8] En síntesis, la mediadora informó que las partes comparecieron a la primera cita de mediación el 25 de febrero de 2022, y tuvieron un total de siete (7) reuniones. No obstante, señaló que la parte apelada informó no estar interesada en continuar con el servicio de mediación, pues no reconocían el balance de la deuda hipotecaria. Así, la mediadora expresó daba por concluido el servicio de mediación sin un acuerdo.

El 4 de agosto de 2022, Oriental presentó una *Moción Solicitando se dicte Sentencia Sumaria a favor de la Parte Demandante*.[9] En su comparecencia alegó que no había una

---

[5] *Íd.*, págs. 50-53.
[6] *Íd.*, págs. 55-56.
[7] *Íd.*, pág. 61.
[8] *Íd.*, págs. 67-68.
[9] Los anejos correspondientes a la *Moción de Sentencia Sumaria* presentada por Oriental son: (1) Proyecto de Sentencia Parcial, (2) Pagaré Hipotecario, (3) Escritura Núm. 159 de Segunda Hipoteca, (4) Certificación de Propiedad inmueble, (5) Declaración Jurada del Sr. Rafael Vélez Rivera, *Manager Mortgage Servicing* de Oriental Bank. *Íd.*, págs. 69-112.

controversia, puesto que, la parte apelada tenía una obligación impagada.

En respuesta, el matrimonio Figueroa-Padilla, se opuso a la moción de sentencia sumaria de la parte apelante.[10] Sostuvo que la alegada deuda que reclamaba Oriental trataba sobre un pago final englobado ("balloon payment") de $19,906.00, el cual no fue pactado en la *Escritura de Hipoteca*, ni en el *Pagaré*. Añaden que, realizaron todos los pagos mensuales de $171.60 desde el 20 de septiembre de 2005 hasta el 1 de septiembre de 2020, mediante débito directo de su cuenta. Por lo tanto, solicitaron al TPI denegara la moción de sentencia sumaria de Oriental, y les permitiera continuar con el descubrimiento de prueba.

El 2 de septiembre de 2022, Oriental presentó *Réplica a Oposición de Sentencia Sumaria*.[11] En síntesis, manifestó que el 21 de julio de 2005, el matrimonio Figueroa-Padilla firmó el *Truth in Lending Disclosure Statement* (TILA), en el cual surge que quedaría un balance impago de $19,717.54.[12] Sostiene que, la deuda reclamada es por el incumplimiento sobre el pago final que quedó impago a la fecha de vencimiento del préstamo hipotecario, y no por las mensualidades de $171.60 que fueron satisfechas a agosto 2020.

El 13 de septiembre de 2022, la parte apelada presentó una *Dúplica a Réplica*.[13] En síntesis, alegaron que no reconocían que los

---

[10] Los anejos correspondientes a la oposición presentada por el Matrimonio Figueroa Padilla son: (1) Pagaré hipotecario, (2) Pagos realizados desde la cuenta del Matrimonio Figueroa Padilla correspondientes a los meses desde Enero-Agosto de 2020 (3) Payoff Letter con fecha del 31 de mayo de 2022, (4) Notificación sobre la Transferencia de la Administración de Préstamo, (5) Carta de Cobro con fecha del 25 de septiembre de 2020, (6) Carta de Cobro con fecha del 24 de octubre de 2020, (7) Payoff Letter con fecha del 9 de octubre de 2020, (8) Carta de Cobro con fecha del 2 de noviembre de 2020, (9) Cheques a nombre de Oriental en concepto de pagos del préstamo, (10) Carta de Cobro con fecha del 24 de noviembre de 2020, (11) Carta de Devolución de Cheques, (12) Payoff Leyyer con fecha del 24 de marzo de 2021, (12) Declaración Jurada de la Sra. Gloria Esther Padilla Calderón. *Íd.*, págs. 113-143.
[11] *Íd.*, págs. 144-146.
[12] *Íd.*, págs. 197-198.
[13] *Íd.*, págs. 201-205

términos del contrato de préstamo, conforme establecidos en el *Pagaré* hubiesen sido modificados. Además, invocaron la doctrina de *rebus sic stantibus,* puesto que el tipo de cobro que Oriental solicitaba era injusto, ilegal y oneroso.

Luego de revisar las posiciones de las partes, así como la prueba sometida, el foro de instancia emitió una *Sentencia Parcial,* el 22 de febrero de 2023, notificada el 24 de febrero de 2023, en la cual desestimó con perjuicio la *Demanda* instada por Oriental.[14] A su vez, formuló las siguientes determinaciones de hechos:

1. El 11 de marzo de 2021, Oriental presentó una *Demanda* de ejecución de hipoteca y cobro de dinero, por el *balloon payment* de $19,609.28, como un pago final en el último mes del préstamo.

2. Oriental es una institución bancaria, organizada y existente, conforme a las leyes de Puerto Rico, con oficinas principales en Oriental Center, 254 Ave. Muñoz Rivera, San Juan, PR 00918.

3. Oriental es el sucesor en derecho y tenedora de buena fe del *Pagaré Hipotecario Original* que grava la Finca Número 22,098.

4. El Sr. Orlando Figueroa Marcano y la Sra. Gloria Esther Padilla Calderón están casados entre sí, bajo el régimen económico de sociedad legal de bienes gananciales, son propietarios y vecinos de Toa Baja, Puerto Rico.

5. El matrimonio Figueroa-Padilla reside en la propiedad objeto de este litigio que tiene la siguiente dirección física: C-23 Santa Guadalupe, Urb. Santa María, Toa Baja, Puerto Rico 00954-0564.

6. El 20 de agosto de 2005, el matrimonio Figueroa-Padilla y R & G Premier Bank of Puerto Rico (RG), otorgaron la Escritura Núm. 159 de *Segunda Hipoteca,* ante el Notario Público Félix Javier Santiago García, mediante una Hipoteca, en San Juan, Puerto Rico. La Segunda Hipoteca recae sobre la Finca Número 22,098, inscrita al Folio 40 del Tomo 378 de Toa Baja del Registro de la Propiedad de Bayamón, Sección Segunda, con la siguiente descripción registral:

> **URBANA:** solar número veintitrés (23) del bloque C de la Urbanización Santa María, sita en el Barrio Candelaria del Municipio de Toa Baja, con un área de trescientos treinta punto setecientos cuarenta y uno metros cuadrados (330.741 m.c.),

---

[14] *Íd.*, págs. 227-249.

equivalentes a 0.0841 de cuerda, en lindes, por el **Norte**, con la calle número tres en distancia de 2,137 metros y en arco de 10.186 metros; por el **Sur**, con los solares número Once y Doce en distancia de 2.137 metros y en arco de 13.102 metros; por el **Este**, con el solar número veinticuatro en distancia de 24.00 metros y por el **Oeste**, con el solar número veintidós en distancia de 24.00 metros. Enclava estructura de hormigón y bloques dedicada a la vivienda.

7. **El 20 de agosto de 2005, el matrimonio Figueroa-Padilla y RG suscribieron el *Pagaré Hipotecario*, ante el Notario Público Félix Javier Santiago García, Afidávit Número 2337, por la suma principal de $26,800.00, más interés al 6.625 por ciento anual pagaderos a favor de RG o al tenedor del pagaré hipotecario en pagos consecutivos mensuales de $171.60, comenzando el 1 de octubre de 2005 hasta 1 de septiembre de 2020. A su vez, el matrimonio Figueroa-Padilla tendría que pagar un cargo por atraso de 5% de cualquier plazo mensual que sea recibido después del día 15 de cada mes de la fecha de vencimiento de dicho plazo.**

8. El matrimonio Figueroa-Padilla y RG pactaron el aseguramiento del pagaré hipotecario antes mencionado y estos primeros son deudores solidarios de dicha deuda.

9. El 2 de noviembre de 2020, Oriental le envió al matrimonio Figueroa-Padilla, por correo certificado con acuse de recibo número 7019 2280 001 1632 2213, al PO Box 564, Toa Alta, PR, 00954-0564, una carta sobre el Préstamo Hipotecario 1348669. En la misma, le informó al matrimonio Figueroa-Padilla que incumplieron con los términos del contrato hipotecario y le solicitaron que, en un término de 30 días, contados a partir de la fecha de la carta, enviaran el total adeudado y que, de no recibir dicho pago, declararían vencida la totalidad de la deuda e iniciarían acción judicial.

10. El 25 de marzo de 2021, Oriental le envió una carta al matrimonio Figueroa-Padilla, indicándole que rechazaban el pago efectuado a su préstamo hipotecario número 1348669, debido a que no cubría la totalidad de la deuda y su caso había sido referido a su división legal.

11. **La hipoteca que Oriental está ejecutando en el caso de autos es la que se otorgó en la Escritura Núm. 159 de *Segunda Hipoteca,* ante el Notario Público Félix Javier Santiago García Hipoteca, en San Juan, Puerto Rico.**

12. El 11 de marzo de 2021, la Registradora de la Propiedad Ivonne Palem Cruz emitió la Certificación de Propiedad Inmueble Sección II de Bayamón,

Certificación Número 2021-004793-CERT de la Finca Número 22,098 de Toa Baja (Certificación Registral de la Finca Número 22,098).

13. La *Certificación Registral de la Finca Número 22,098,* establece que el matrimonio Figueroa-Padilla es el titular registral de la propiedad objeto del presente litigio, en virtud de la *Escritura Número 157 de Compraventa,* por el precio de venta de $134,000.00, otorgada el 20 de agosto de 2005, ante el Notario Público Félix Javier Santiago García, según inscripción 4.

14. La *Certificación Registral de la Finca Número 22,098,* establece que se encuentran inscritas dos Hipotecas en el Tomo Móvil del Registro de la Propiedad, Sección II de Bayamón. Veamos:

> Hipoteca: Afecta a hipoteca en garantía de un pagaré a favor de R&G Premier Bank of Puerto Rico; por la suma principal de $107,200.00, con intereses al 6.375% anual, vencedero el 1 de septiembre de 2035, tasada en $107,200.00; en virtud de la Escritura Número 158, otorgada en San Juan el 20 de agosto de 2005, ante Félix Javier Santiago García, según inscripción 5.

> Hipoteca: Afecta a hipoteca en garantía de un pagaré a favor de R&G Premier Bank of Puerto Rico; por la suma principal de $26,800.00, con intereses al 6.625% anual, vencedero el 1 de septiembre de 2020, tasada en $26,800.00; en virtud de la escritura número 159, otorgada en San Juan el 20 de agosto de 2005, ante Félix Javier Santiago García, según inscripción 6.

15. El *Pagaré Hipotecario* está garantizado con una segunda hipoteca, la cual consta inscrita en el Registro de la Propiedad, gravando la Finca Número 22,098.

16. La *Certificación Registral de la Finca Número 22,098,* establece de forma y específica los términos de la suma principal que el matrimonio Figueroa-Padilla adeuda a RG (Oriental), y en ningún lugar menciona la existencia de un pago final global o *balloon payment* de $19,609.28, en el último mes del préstamo.

17. **Los términos de la Escritura Núm. 159 de *Segunda Hipoteca* y del *Pagaré Hipotecario* Afidávit Número 2337, son unos claros, específicos y detallados en relación a los pagos que tendrán que efectuar el matrimonio Figueroa-Padilla, durante la vigencia del préstamo y en caso de una acción judicial de ejecución de hipoteca. Surge de manera clara que en ninguno de los términos dispuestos en esos contratos de adhesión se hace mención alguna de que el matrimonio Figueroa-Padilla tuviera que**

**pagar al acreedor hipotecario (Oriental) un pago final englobado de $19,609.28, como último pago al finalizar el vencimiento del préstamo hipotecario.**

18. Los términos de la Escritura Núm. 159 de *Segunda Hipoteca* y del *Pagaré Hipotecario* Afidávit Número 2337, son unos específicos y claros y establecen de manera detallada cuáles son las sumas de dinero que tiene derecho a cobrarle la Institución Financiera al matrimonio Figueroa-Padilla.

19. **Según el *Pagaré Hipotecario* y la Escritura Núm. 159 de *Segunda Hipoteca* todos los pagos a ser efectuados por el matrimonio Figueroa-Padilla serían de $171.60 hasta el saldo de la deuda.**

20. El 29 de mayo de 2022, Oriental emitió un *Payoff Letter* al matrimonio Figueroa-Padilla, donde establecen que para saldar su préstamo hipotecario le deben pagar a estos segundos la suma de $23,999.54.

21. El 6 de diciembre de 2022, el matrimonio Figueroa-Padilla y Oriental suscribieron conjuntamente una *Moción Conjunta en Cumplimiento de Orden,* donde informaron que el 6 de diciembre de 2022, inspeccionaron *el Pagaré Hipotecario Original* en las instalaciones bancarias de Oriental y corroboraron las firmas de los demandados y que el instrumento negociable inspeccionado es el original.

22. El *Payoff Letter* del 31 de mayo de 2022, refleja que el Banco solamente le está cobrando intereses a la parte demandada, por la suma reclamada en la *Demanda* que es de $19,609.21 desde el 1 de agosto de 2022, lo cual demuestra que hasta agosto de 2020 no hubo retrasos en el pago del préstamo hipotecario.

23. El matrimonio Figueroa-Padilla pagó puntualmente todos los pagos mensuales de $171.60 desde el 20 de agosto de 2005 hasta el 1 de septiembre de 2020, mediante débito directo de su cuenta con Oriental número 157-311056673.

24. El 2 de septiembre de 2022, Oriental aceptó en su *Réplica a Oposición de Sentencia Sumaria* que, según el *Pagaré Hipotecario* y la *Escritura de Segunda Hipoteca,* todos los pagos a ser satisfechos por el matrimonio Figueroa-Padilla serían de $171.60 hasta el saldo de la deuda.

25. El 2 de septiembre de 2022, Oriental aceptó en su *Réplica a Oposición de Sentencia Sumaria,* que el matrimonio Figueroa-Padilla realizó 179 pagos de $171.60 hasta agosto de 2020.

26. Oriental aceptó que el matrimonio Figueroa-Padilla realizó 179 pagos de $171.60 hasta agosto de 2020, por lo que el *Préstamo Hipotecario Núm. 1348669,* según establecen los términos de los contratos de adhesión, la Escritura Núm. 159 de *Segunda Hipoteca* y del *Pagaré*

*Hipotecario,* Afidávit Número 2337, fue saldado en su totalidad, ya que no surge de los términos de dichos contratos la existencia de un pago global de $19,609.21.

27. El 2 de septiembre de 2022, Oriental indicó en su *Réplica a Oposición de Sentencia Sumaria,* que su reclamación de deuda se trata únicamente de un pago englobado o *balloon payment,* por la suma de $19,609.28, que no se menciona en la Escritura Núm. 159, ni en el Pagaré.

28. El 2 de septiembre de 2022, Oriental aceptó en su *Réplica a Oposición de Sentencia Sumaria,* que ni la Escritura de Hipoteca, ni el Pagaré, mencionan que la parte deudora deberá pagar al acreedor un pago final englobado de $19,609.28, como último pago al finalizar el vencimiento del préstamo.

29. El 21 de julio de 2005 y el 20 de agosto de 2005, el matrimonio Figueroa-Padilla firmó e inicio el *Trust In Lending Disclosure Statement,* donde se indicó que se efectuaría un pago global o *balloon payment* el 1 de agosto de 2020.

(Énfasis nuestro).

Por último, señaló que examinados los términos de la Escritura Núm. 159 de *Segunda Hipoteca* y del *Pagaré Hipotecario,* dichos contratos no establecían una cláusula que dispusiera el pago global o *balloon payment* de $19,609.28, como último pago al finalizar el vencimiento del préstamo hipotecario. Cónsono con lo anterior, determinó que el matrimonio Figueroa-Padilla, no adeudaba suma alguna respecto al *Pagaré Hipotecario*, por lo que, desestimó la causa de acción, ordenándole a Oriental cancelar el pagaré y a presentar en el Registro de la Propiedad los documentos necesarios para cancelar la *Segunda Hipoteca.*

Finalmente, el foro *a quo* dispuso:

[E]xisten controversias de hechos y de credibilidad sobre si las partes efectuaron una contratación válida e informada, sobre un pago final englobado de $19,609,28, como último pago al finalizar el vencimiento del préstamo. Aclaramos que de demostrarse que dicho gravamen es válido, dicha deuda es una personal y no grava la Finca Número 22,098.

En desacuerdo con la determinación del foro primario, el 10 de marzo de 2023, Oriental presentó una *Reconsideración para que*

*se deje sin efecto Sentencia Parcial en virtud de los términos del Pagaré Hipotecario.*[15] La parte apelante arguyó que el TPI dictó la sentencia basada en una apreciación incorrecta del lenguaje contenido en el *Pagaré*. Reiteró que, el *Pagaré* no establecía un número de pagos mensuales a realizar para saldar la deuda, sino que disponía que la parte apelada debía pagar mensualmente la cantidad de $171.60, hasta que pagaran totalmente la deuda. Sostienen que de la evidencia presentada, detalló los pagos realizados por el matrimonio Figueroa-Padilla hasta agosto de 2020; sin embargo, quedó un balance pendiente de $19,609.28 pagaderos a la fecha de vencimiento del pagaré el 1 de septiembre de 2020.

Por otra parte, Oriental señaló que, conforme al Art. 121 de la Ley Hipotecaria, Ley Núm. 210-2015, según enmendada, conocida como la "*Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*" (en adelante, "LRPI" o Ley Núm. 210-2015), el registrador no cancelaría la inscripción de una hipoteca, mediante instancia. También, que a quien le corresponde solicitar la cancelación de la hipoteca es al deudor, mediante escritura pública.

En respuesta, el matrimonio Figueroa-Padilla, presentó su oposición, mediante la cual reiteraron que Oriental no podía exigir el pago de una obligación hipotecaria mediante un documento distinto al *Pagaré*. Por lo tanto, arguyeron que no procedía el cobro de ninguna otra obligación que no fue pactada entre las partes.

Así las cosas, el 24 de mayo de 2023, siendo notificada el 25 de mayo de 2023, el foro primario emitió una *Resolución y Orden.*[16] En esta, el foro primario declaró no ha lugar la solicitud de reconsideración presentada por Oriental. El foro *a quo* dispuso que, reexaminó las alegaciones de las partes, así como todo el expediente,

---

[15] *Íd.*, págs. 254-257.
[16] *Íd.*, págs. 258-273.

y determinó que, Oriental no proveyó ninguna ley o jurisprudencia del Tribunal Supremo que estableciera que una tabla de amortización tenía capacidad legal para cambiar los términos de una *Escritura de Hipoteca* y *Pagaré Hipotecario*. Añadió que, el hecho de que un empleado de Oriental haya incluido el pago global en una Tabla de Amortización, no afecta los términos del *Pagaré Hipotecario*, ni de la *Escritura de Hipoteca*. Así las cosas, el TPI expresó lo siguiente:

> **El Tribunal concluye que la conducta de Oriental desde la presentación de la *Demanda* hasta el presente en tratar de cobrar un pago global o *balloon* sin ningún fundamento en hecho o en derecho ha probado que su conducta es una crasamente temeraria y determinamos que se impone la suma de $10,000.00 a Oriental en concepto de temeridad para que sea pagado al matrimonio Figueroa-Padilla hasta esta etapa del procedimiento. Aclaramos que el Tribunal podría volver a imponer temeridad a la parte que así lo amerite en posteriores etapas del proceso.**

> El Tribunal reitera la corrección de la totalidad de su *Sentencia Parcial*, emitida el 22 de febrero de 2023 y notificada el 24 de febrero de 2023, por lo que se incorpora por referencia la totalidad de la misma. **La referida Sentencia Parcial solo se enmienda para incluir la determinación de que Oriental es crasamente temerario y tiene que pagarle al matrimonio Figueroa-Padilla la suma de $10,000.00 y aclararle a Oriental que en la referida *Sentencia Parcial* se determinó y se le ordenó que este era responsable de costear y realizar todos los trámites extrajudiciales para que se cancele la Segunda Hipoteca**. (Énfasis en el original).

Inconforme con el dictamen, Oriental instó el presente recurso de apelación y formuló los siguientes señalamientos de error:

> PRIMER ERROR: Erró el TPI al desestimar la causa de acción de ejecución basándose en una interpretación errónea del Pagaré Hipotecario y la Hipoteca.

> SEGUNDO ERROR: Erró el TPI al abusar de su discreción y ordenar a Oriental a asumir los costos de la cancelación de la hipoteca obviando que los Deudores se obligaron contractualmente a asumir ese costo y que hay un balance impagado.

TERCER ERROR: Erró el TPI al imponer una sanción de $10,000.00 a Oriental por ejercer su derecho a solicitar una reconsideración.

CUARTO ERROR: Erró el TPI y mostró parcialidad al cuestionar la prueba presentada por Oriental aun cuando la representación de los Deudores no presentó ningún cuestionamiento sobre ésta, al así hacerlo permitió la inferencia de parcialidad.

## II.

### A.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[17]

En lo pertinente, procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada, si alguna, demuestran la inexistencia de controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho procede hacerlo.[18]

El promovente de la sentencia sumaria deberá demostrar que no existe controversia real sustancial de ningún hecho material.[19] Un hecho material es definido como aquel que "puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[20] Se podrá derrotar una moción de sentencia sumaria si existe una "duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[21]

---

[17] *Oriental Bank v. Caballero García,* 2023 TSPR 103, resuelto el 23 de agosto de 2023; *Rosado Reyes v. Global Healthcare*, 205 DPR 796 (2020); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015).

[18] Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *González Meléndez v. Municipio Autónomo de San Juan y otros,* 2023 TSPR 95, resuelto el 24 de julio de 2023; *Rosado Reyes v. Global Healthcare*, supra, págs. 808 y 809.

[19] Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a); *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Rosado Reyes v. Global Healthcare*, supra, pág. 808.

[20] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129-130 (2012).

[21] *Íd.* pág. 130; *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 756 (2012).

Toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la forma más favorable a la parte que se opone a la sentencia sumaria.[22] Nuestro más alto foro ha expresado, que, "el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si verdaderamente existe una controversia sustancial sobre hechos materiales y esenciales".[23] No se dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.[24]

A su vez, nuestro Tribunal Supremo ha reiterado que, el Tribunal de Apelaciones se encuentra en igual posición que los tribunales de primera instancia al revisar solicitudes de sentencia sumaria.[25] Es por lo que, el Tribunal de Apelaciones "está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario".[26] El Tribunal de Apelaciones no podrá considerar documentos que no fueron presentados ante el TPI, ni adjudicar hechos materiales y esenciales en controversia.[27] Los criterios a seguir por este tribunal apelativo intermedio, al atender la revisión de una sentencia sumaria dictada por el foro primario, han sido

---

[22] *Const. José Carro v. Mun. Dorado*, supra, pág. 130; *Pepsi-Cola v. Mun. Cidra et al.*, supra, a la pág. 756.
[23] *Fernández Martínez v. RAD-MAN San Juan*, 208 DPR 310 (2021).
[24] *Pepsi-Cola v. Mun. Cidra et al.*, supra, pág. 756.
[25] *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra; *Rosado Reyes v. Global Healthcare*, supra, pág. 809.
[26] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.
[27] *Íd.* págs. 114 y 115.

enumerados con exactitud por nuestro Tribunal Supremo.[28] A tenor con lo anterior, el Tribunal de Apelaciones debe:

> 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> 2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;
>
> 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> 4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

## B.

El Art. 1042 del Código Civil de Puerto Rico de 1930[29], según enmendado, 31 LPRA sec. 2992, ("Código Civil"), enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico. Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[30] En particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[31] Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3)

---

[28] *Roldán Flores v. M. Cuebas et al*, 199 DPR 664, 679 (2018).

[29] El referido Código Civil de Puerto Rico de 1930, según enmendado, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq.* Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.

[30] *Íd.*

[31] 31 LPRA sec. 3371

causa de la obligación que se establezca.[32] De manera que, al concurrir los referidos elementos nace una obligación; desde el punto de vista del acreedor, existe un derecho a exigir su cumplimiento y, desde la perspectiva del deudor, existe el deber de cumplirla.

Por otra parte, como es sabido, en nuestro ordenamiento jurídico impera el principio de la autonomía de la voluntad, en virtud del cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público.[33] Además, otro axioma que rige en nuestra jurisdicción es la libertad de contratación. Éste, entre otras cosas, permite que "[l]os contratos [sean] obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez".[34] En otras palabras, generalmente, una obligación contractual cobra vida jurídica independientemente de la forma mediante la cual las partes finalmente concreten dicha obligación, salvo que por ley se exija – como requisito *ad solemnitatem* – una forma específica de otorgamiento para su validez.

También, es un principio prevaleciente en nuestro sistema de derecho que las relaciones contractuales se rigen por el principio de *pacta sunt servanda*. El referido principio, consignado en el Art. 1044 del Código Civil, *supra*, establece que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos".[35] Así, luego de perfeccionado el contrato, las partes quedan obligadas no solo al

---

[32] Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3451 y 3391; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001).
[33] Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Álvarez v. Rivera*, 165 DPR 1 (2005).
[34] Art. 1230 del Código Civil, 31 LPRA sec. 3451.
[35] 31 LPRA sec. 2994; *PRFS v. Promoexport*, 187 DPR 42, 52 (2012).

cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[36]

Cónsono con lo antes expuesto, en nuestra jurisdicción rige la teoría de subjetividad en la interpretación de los contratos.[37] La teoría de la subjetividad consiste en indagar cuál fue la intención de los contratantes. Esto conlleva reconstruir el sentido de una declaración de negocios para conseguir los efectos deseados por las partes.[38] Algunos contratos requerirán interpretación para determinar la naturaleza de la prestación a la que se obligó cada parte.[39]

Para realizar tan ardua tarea, el Código Civil establece unas disposiciones generales para la interpretación de los contratos. Entre ellas, el Art. 1234 dispone que "para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato"[40]. Por otro lado, es importante tener presente que, "cuando los términos de un contrato son claros, y no dejan duda sobre la intención de los contratantes, se utilizará el sentido literal de sus cláusulas".[41] Del mismo modo, cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación.[42] El Código Civil dispone que, "[c]ualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar".[43]

---

[36] Art 1210 del Código Civil, 31 LPRA sec. 3375.
[37] *Marcial v. Tomé*, 144 DPR 522, 537 (1997); *Unisys v. Ramallo Brothers*, 128 DPR 842, 853 (1991).
[38] *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 DPR 161, 174 (1989); *Marcial v. Tomé*, supra.
[39] *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 725 (2001).
[40] 31 LPRA sec. 3472.
[41] Art. 1233 del Código Civil, 31 LPRA sec. 3471.
[42] *Íd.*; *González v. Sucn. Cruz*, 163 DPR 449 (2004); *Residentes Parkville v. Díaz, Palou*, 159 DPR 374 (2003).
[43] 31 LPRA sec. 3473.

Además, cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse el más adecuado para que produzca el efecto.[44]

Por lo tanto, si bien es cierto que el tribunal tiene que considerar la intención de las partes para interpretar los contratos - ante la encomienda de determinar la naturaleza de una obligación contractual o el alcance de esta - dicha "interpretación tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos".[45] Esto por motivo de que, una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios y son los tribunales quienes están facultados para velar por el cumplimiento de estos.[46] Más importante aún, los tribunales de justicia no pueden relevar a una parte del cumplimiento de su obligación contractual cuando dicha obligación es legal, válida y carece de vicio alguno.[47]

## c.

Por otra parte, como es sabido la hipoteca es, en esencia, un derecho real, de naturaleza accesoria e indivisible, y de constitución registral que garantiza una obligación pecuniaria.[48] El Art. 1773 del Código Civil de 1930, 31 LPRA sec. 5041, dispone que "[s]olo podrán ser objeto del contrato de hipoteca: (1) los bienes inmuebles; (2) los derechos reales enajenables con arreglo a las leyes, impuestos sobre bienes de aquella clase". Además, por su naturaleza constitutiva, para que la hipoteca sea válida y cobre vida jurídica, tiene que constar en escritura pública y estar inscrita en el Registro de la Propiedad.[49]

---

[44] 31 LPRA sec. 3474.

[45] *S.L.G. Irizarry v. S.L.G. García*, supra, pág. 727.

[46] *Mercado Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

[47] *De Jesús González v. Autoridad de Carreteras*, 148 DPR 255, 271 (1999); *Mercado, Quilichini v. U.C.P.R.,* supra; *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345, 351 (1984); *Olazábal v. U.S. Fidelity*, 103 DPR 448, 462 (1975).

[48] *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 111 (2016).

[49] Art. 1774 del Código Civil de 1930, 31 LPRA sec. 5042; Art. 57 de la Ley Núm. 210-2015.

Por consiguiente, si el derecho real de hipoteca no se constituye, a través de su inscripción en el Registro de la Propiedad, sólo existirá un derecho de crédito exigible y válido, pero no el derecho real de hipoteca.[50]  Dicho de otro modo, una escritura de constitución de hipoteca no inscrita en el Registro de la Propiedad solo tiene el carácter de un crédito personal. Al respecto nuestro Tribunal Supremo ha expresado que "[l]a inscripción registral de la hipoteca representa el acto constitutivo mediante el cual la garantía, que la hipoteca representa, produce efectos reales y adviene eficaz *erga omnes*".[51]

El contrato de hipoteca supone la existencia de dos figuras jurídicas, una obligación principal, y la hipoteca en sí, que sirve de garantía al acreedor de la primera. El carácter accesorio de la hipoteca implica que esta subsiste mientras el crédito que asegura tenga vida, por lo que, extinguido el crédito (obligación principal), se extingue la hipoteca.[52]

A su vez, entre las clases de hipoteca voluntaria se encuentra la constituida en garantía de instrumentos negociables. En esos casos, cuando la hipoteca se hubiere constituido para garantizar títulos transferibles por endoso o al portador -como el pagaré en el caso de epígrafe-, el derecho hipotecario se entenderá transferido, con el título, sin necesidad de dar de ello conocimiento al deudor, ni de hacerse constar la transferencia en el Registro. Es decir, la propia ley hipotecaria reconoce la transferencia automática del derecho de hipoteca cuando se transfiere el instrumento que ésta garantiza.[53]

Por último, quien tenga a su favor un crédito hipotecario, ostenta una acción personal (el crédito) y una acción real (la

---

[50] *S.J. Credit, Inc. v. Ramírez*, 113 DPR 181, 188-189 (1982).
[51] *Rosario Pérez v. Registrador,* 115 DPR 491, 494 (1984). Resuelto bajo la derogada Ley Hipotecaria y del Registro de la Propiedad de 1979, estatuto aplicable a los hechos de nuestro caso.
[52] *Liechty v. Descartes Saurí*, 109 DPR 496, 502 (1980).
[53] *Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290, 300-301 y 308 (2017).

hipoteca). Actualmente, en nuestro ordenamiento jurídico existen dos vías procesales para hacer efectivo el crédito hipotecario: (1) la acción personal de cobro de dinero, con embargo de la finca en aseguramiento de sentencia, según provee para ello la Regla 51.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 51.2, y (2) el procedimiento de ejecución de hipoteca por la vía ordinaria establecido en la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq.*[54] y la Regla 51.3 (b) de las de Procedimiento Civil, *supra.*[55]

De modo que, en estos casos el acreedor hipotecario para satisfacer su crédito puede optar entre el requerimiento personal al deudor o la ejecución de la garantía hipotecaria. Es decir, esto último es el mecanismo que tiene disponible el acreedor hipotecario ante el incumplimiento del deudor hipotecante con el pago correspondiente a la deuda u obligación principal garantizada mediante la constitución del derecho real de hipoteca.

## D.

En nuestro ordenamiento jurídico se ha reconocido la validez de los contratos de adhesión.[56] Éstos son aquellos donde las condiciones se han establecido por una de las partes contratantes, por lo que el aceptante "no presta colaboración alguna a la formación del contenido contractual, quedando así sustituida la ordinaria determinación bilateral del contenido del vínculo por un simple acto de aceptación o adhesión al esquema predeterminado unilateralmente."[57]     La     norma     establecida     por     nuestra

---

[54] Procedimiento que antes se regía por las disposiciones de la Ley Hipotecaria de 1979, que fue derogada al implantarse la Ley Núm. 210-2015.

[55] *Atanacia Corp. v. J.M. Saldaña, Inc.,* 133 DPR 284, 292-294 (1993); véase, además, L. Rivera, *Derecho Registral Inmobiliario Puertorriqueño,* 3ra ed., San Juan, Jurídica Editores, 2012, págs. 567-568.

[56] *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 176 (2011).

[57] *Maryland Cas'y Co. v. San Juan Rac'g Assoc. Inc.,* 83 DPR 559, 566 (1961), citando a J. Castán Tobeñas, Derecho Civil español, común y foral, 8va ed., Madrid, Ed. Reus, 1954, T. 3, pág. 332.

jurisprudencia es que este tipo de contratos se interpretará de forma favorable hacia la parte que nada tuvo que ver con su redacción.[58] Sin embargo, "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[59] Así, al interpretar un contrato de adhesión, la función principal del tribunal será evaluar la presencia de cláusulas ambiguas.[60] Por lo tanto, "en ausencia de ambigüedad, el cumplimiento con las cláusulas del contrato es obligatorio y su contenido es la ley entre las partes".[61]

Cuando éstos contienen una cláusula confusa, la misma se interpretará liberalmente a favor del asegurado.[62] No obstante, este análisis no se puede realizar de manera desenfrenada sino únicamente cuando se justifique y surja claramente la necesidad de interpretación. Ello, como corolario del principio básico de derecho contractual que dispone que cuando los términos y condiciones son claros, específicos y libres de ambigüedades, los mismos serán obligatorios entre las partes.[63]

### III.

Oriental alega, en síntesis, que el TPI erró al desestimar la causa de acción de ejecución de hipoteca, basándose en una interpretación errónea de la prueba presentada, el pagaré hipotecario y la hipoteca. A su vez, aducen que el foro primario abusó de su discreción al mostrar parcialidad al cuestionar la prueba desfilada por estos, aun cuando no se presentó cuestionamiento alguno o prueba en contrario por los apelados. Además, cuestionan la sanción que el TPI les impuso de diez mil ($10,000.00) dólares, por solicitar, en derecho, la reconsideración

---

[58] *Coop. Sabaneña v. Casiano Rivera, supra,* a la pág. 176.
[59] Art. 1233 del Código Civil, 31 LPRA sec. 3471.
[60] *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 72-73 (2011).
[61] *San Luis Center v. Triple-S,* 208 DPR 824 (2022), citando a *R.J. Reynolds v. Vega Otero,* 197 DPR 699, 708 (2017).
[62] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1021 (2020).
[63] *Quiñones López v. Manzano Posas,* 141 DPR 139, 155 (1996).

de la sentencia. Solicitan a este Tribunal de Apelaciones, que se deje sin efecto la *Sentencia Parcial* emitida por el TPI y se dicte sentencia sumaria a su favor.

Por su parte, el matrimonio Figueroa Padilla alega que Oriental, en repetidas ocasiones, intentó inducir a error al foro primario al hacer alegaciones que no estaban sustentadas con la prueba y que entorpecieron el descubrimiento de la verdad. Explican que el documento intitulado TILA, el cual alega y sustenta la parte apelante fue donde se pactó la cantidad adeudada, no es suficiente para poder demostrar que en efecto se pactó un acuerdo entre las partes para un pago final de $19,717.00. Finalmente, alegan que Oriental actuó con temeridad, por lo que el TPI podía, bajo su facultad discrecional, imponer la sanción correspondiente y los costos del litigio.

Según expuesto, al momento de evaluar si procede una sentencia sumaria, los foros apelativos están en la misma posición que el TPI. Por ello, en el proceso de evaluar una sentencia sumaria dictada por el TPI, los tribunales revisores están llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra.* De encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho. Examinados los escritos de las partes, procedemos a resolver.

Se desprende del expediente ante nuestra consideración que, el 20 de agosto de 2005, el matrimonio Figueroa Padilla suscribió un pagaré hipotecario a favor de RG Premier Bank, debidamente endosado a favor de Oriental. Como parte de lo pactado, se determinó que la suma principal a pagarse consistiría de $26,800.00, devengando intereses a razón del 6.625%, pagadero mensualmente en plazos de $171.60. Como garantía de pago, el

matrimonio Figueroa Padilla también constituyó una hipoteca que gravaba un bien inmueble sito en Toa Baja.

Oriental alega que el matrimonio Figueroa Padilla incumplió con los pagos correspondientes al pagaré hipotecario desde el 1 de agosto de 2020, por lo que aseguran que existe una deuda de $19,609.28 del principal, más los intereses, además de la suma por concepto de costas, gastos y honorarios de abogados. Para sustentar sus alegaciones, presentaron un documento intitulado *Truth in Lending Disclosure Statement*[64], el cual alegan fue firmado por el matrimonio Figueroa Padilla en donde aparece un aparente balance que debía ser pagado por estos. No le asiste la razón. Veamos.

En cuanto a lo pactado entre las partes referente a los pagos y los intereses en el *Pagaré*, el documento dispone lo siguiente:

> Por valor recibido, el (los) suscribiente (s) ("Deudor") promete (n) pagar a RG PREMIER BANK OF PUERTO RICO o a su orden, **la suma de TWENTY-SIX THOUSAND EIGHT HUNDRED AND 00/100 DÓLARES, con intereses sobre el balance insoluto de principal desde la fecha de este Pagaré, hasta su pago a razón del SIX AND 62500/10000 por ciento anual**. El principal e intereses serán pagaderos en RG PREMIER BANK OF PUERTO RICO RG PLAZA BUILDING 280 PIÑERO AVE. SAN JUAN, PR 0091 o en cualquier otro lugar que el tenedor de este Pagaré indique por escrito, **en plazos mensuales y consecutivos de ONE HUNDRED SEVENTY-ONE AND 60/100 dólares (US $171.60) en el primer (1er) día de cada mes** comenzando en octubre de 2005 hasta que se pague totalmente la deuda evidenciada por el presente, si no antes pagada, quedará vencida y pagadera en 1 de septiembre de 2020.

(Énfasis nuestro).

Además, la Escritura Núm. 159 de *Segunda Hipoteca*, respecto a las condiciones acordadas entre las partes, disponía lo siguiente:

> SEGUNDO: Que el deudor adeuda al Prestador la suma principal de **TWENTY SIX THOUSAND EIGHT HUNDRED DOLLARS con interés sobre la misma a razón del six point six two five (6.625%) por ciento anual,** cuya deuda esta evidenciada por un pagaré pagadero al Prestador, o a su orden, fechado August,

---

[64] Véase, *Apéndice* de la Apelación, págs. 197-198.

twenty (20) two thousand five (2005) (en adelante "el Pagaré") en el cual se dispone para el **pago de plazos mensuales de principal e intereses con el balance de la deuda,** si no ha sido antes satisfecho, vencedero y pagadero el September, two thousand twenty (2020).

(Énfasis nuestro).

De un análisis de lo anterior, concluimos, al igual que el TPI, que no surge cláusula o disposición alguna que disponga que debía realizarse un pago global por la cantidad de $19,609.28 como uno final del *Pagaré*. En este caso, las cláusulas estipuladas entre ambas partes son claras y detalladas en cuanto a las cantidades, la frecuencia de los pagos, el interés y la cantidad a satisfacer una vez finalizado el término del *Pagaré*. Incluso, de la comparecencia de Oriental en la *Réplica a Oposición de Sentencia Sumaria*, surge que estos aceptaron que ni de la *Escritura de Hipoteca* ni del *Pagaré Hipotecario* existe alguna disposición, cláusula o condición que la cantidad en controversia debía ser satisfecha como pago final al culminar el préstamo hipotecario.[65]

Es un hecho probado que el matrimonio Figueroa Padilla realizó 179 pagos por la cantidad de $171.60, mediante débito directo de su cuenta con Oriental, hasta la fecha acordada como vencimiento del término del Pagaré Hipotecario. Los referidos pagos fueron realizados desde el 20 de agosto de 2005 hasta el 1 de septiembre de 2020 y estos incluían el pago del Centro de Recaudación de Ingresos Municipales (CRIM), por lo que la cifra de la totalidad mensual ascendía a $248.00 dólares.[66]

Es importante destacar que nuestro más alto foro en *First Bank v. Registradora*, 208 DPR 64 (2021), estableció que "para modificar una hipoteca es necesario hacerlo constar mediante escritura pública".

---

[65] Véase, *Apéndice* de la Apelación, págs. 144-146.
[66] *Id.*, págs. 123-130.

A tales efectos, en este caso al no haber un documento firmado por el matrimonio Figueroa Padilla que constara en escritura pública en el cual se modificara o añadiera alguna condición a las ya establecidas en el *Pagaré* firmado por ambas partes o que dispusiera la cantidad de $19,609.28 como pago final global a satisfacerse, no tienen validez ni fundamento jurídico las alegaciones de Oriental. Por lo tanto, Oriental no puso en posición a este Tribunal para poder concluir que procedía la ejecución de hipoteca.

Atendidos el primer y cuarto señalamiento de error antes esbozados, procedemos a examinar el tercer señalamiento de error, referente a la cancelación del pagaré. En síntesis, Oriental alega que la sanción impuesta por el TPI ascendente a diez mil ($10,000.00) dólares atenta contra la buena fe del banco para poder cobrar lo que ellos consideraban el matrimonio Figueroa Padilla adeudaba como parte del *Pagaré*. Veamos.

El TPI en su *Sentencia Parcial* emitida el 22 de febrero de 2023, notificada el 24 de febrero de 2023, nada dispuso respecto a una sanción económica a Oriental en concepto de temeridad. No es hasta que Oriental, ejerciendo el derecho que le corresponde de solicitar reconsideración, que el foro primario emitió una *Resolución y Orden* en la cual, dentro de otras cosas, reiteró la sentencia parcial y enmendó la misma para incluir una sanción de $10,000.00 por temeridad. En lo específico, el TPI dispuso que:

> … se reitera en su totalidad la *Sentencia Parcial*, emitida el 22 de febrero de 2023 y notificada el 24 de febrero de 2023, donde se desestimó con perjuicio la causa de acción de ejecución de hipoteca de la Finca Número 22,098, por lo que se incorpora por referencia la totalidad de la misma. La referida *Sentencia Parcial* solo se enmienda para incluir la determinación de que Oriental es crasamente temerario y tiene que pagarle al matrimonio Figueroa-Padilla la suma de $10,000.00 y aclararle a Oriental Bank que en la referida *Sentencia Parcial* se determinó y se le ordenó que este era responsable de costear y realizar todos los trámites para

que se cancele la Segunda Hipoteca en el Registro de la Propiedad.

Tomando en consideración el expediente y las comparecencias de ambas partes, determinamos que la sanción impuesta a Oriental por el foro primario fue una excesiva e injustificada. En la *Resolución y Orden* emitida por el TPI el 24 de mayo de 2023, notificada el 25 de mayo de 2023, en cuanto a la sanción, el foro primario dispuso lo siguiente:

> El tribunal concluye que la conducta de Oriental desde la presentación de la Demanda hasta el presente en tratar de cobrar un pago global o balloon sin ningún fundamento en hecho o derecho ha probado que su conducta es una crasamente temeraria y determinamos que se impone la suma de $10,000.00 a Oriental en concepto de temeridad para que sea pagado al matrimonio Figueroa-Padilla hasta esta etapa del procedimiento. Aclaramos que el Tribunal podría volver a imponer temeridad a la parte que así lo amerite en posteriores etapas del proceso.

Sin embargo, del texto de la referida *Resolución y Orden,* no se reveló justificación o fundamento alguno de la razón por la cual se impuso la sanción, y tampoco los alegados actos por parte de Oriental que merecieron tal sanción. El foro primario se limitó a expresar que Oriental, al presentar en varias ocasiones su postura respecto a la deuda que entendían quedaba por sufragar, incurrió en temeridad. Primero, ante la falta de un fundamento válido en derecho, destacamos que no se debe imponer una sanción por temeridad a una parte por el mero hecho de que esta utilice los remedios procesales que las reglas le proveen, tales como la solicitud de reconsideración. Segundo, resulta inconsistente imponer una sanción por temeridad y concluir que existe una posibilidad sobre un pago final englobado que pudiera constituir una deuda personal. Este Tribunal entiende que, no existiendo una justificación válida para la imposición de la sanción a Oriental, determinamos dejar sin efecto dicha sanción, modificando así la *Sentencia Parcial* emitida por el TPI.

Finalmente, el foro primario ordenó que Oriental realizara las gestiones necesarias para cancelar la Segunda Hipoteca en el Registro de la Propiedad. En lo pertinente, dispuso que:

> Se ordena que una vez sea final y firme la presente *Sentencia Parcial*, Oriental Bank tendrá un término de 30 días calendarios para cancelar el Pagaré Hipotecario y presentar en el Registro de la Propiedad la Instancia Cancelando la Segunda Hipoteca, y deberá presentar en un término de 10 días luego de presentada la Instancia, una *Moción Informativa*, en la cual se deberán anejar el recibo de presentación.

De un análisis de la Escritura 159 del 20 de agosto de 2005, inciso 21[67], se desprende con meridiana claridad que los Sres. Orlando Figuera Marcano y Gloria Padilla Calderón se obligaron a realizar la correspondiente cancelación. Lo pactado en la escritura, lee:

> 21. Descargo: Una vez pagada todas las sumas garantizadas por esta Hipoteca, el Prestador descargará y cancelará esta Hipoteca **por cuenta del Deudor** o, a opción del Deudor, endosará el Pagaré "para cancelación únicamente" sin cargo al Deudor. (Énfasis nuestro).

Del Alegato de los Apelados no encontramos ningún argumento o réplica, en contrario a lo pactado en la Escritura 159, inciso 21. Por lo tanto, este Tribunal modifica el dictamen del TPI y determina que los costos para cancelar la correspondiente Hipoteca serán con cargo del matrimonio Figueroa-Padilla.

**IV.**

Por los fundamentos antes expuestos, se **modifica** la Sentencia Parcial emitida por el TPI únicamente a los siguientes efectos: Se elimina la sanción económica de diez mil ($10,000.00) según fue impuesta a Oriental Bank en esta etapa de los procedimientos, se elimina la determinación de que Oriental Bank cancelará el pagaré hipotecario a su costo y se modifica para que dicha cancelación sea a costo del matrimonio Figueroa-Padilla

---

[67] Índice del Apéndice páginas 102-103.

conforme pactado en la Escritura 159, inciso 21. Así modificada se confirma.

Se devuelve el caso al foro primario para la continuación de los procedimientos.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones